UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20367-ALTMAN/Lett

DANA LOPEZ, *on behalf of herself and others*
*similarly situated*,

        *Plaintiffs*,

v.

JW LEE INC., *d/b/a*
SCARLETT'S CABARET,

        *Defendant*.

_____/

## ORDER

Our Plaintiffs seek conditional certification under the Fair Labor Standards Act ("FLSA"). The Defendant argues that collective and class-action waivers signed by the Plaintiffs bar any such certification. After careful review, we **DENY** the motion for conditional certification.

### BACKGROUND

The Defendant "owns and operates" Scarlett's Cabaret, an "adult entertainment club." Motion for FLSA Conditional Certification (the "Motion") [ECF No. 33] at 2. The "Named Plaintiff"—Dana Lopez—and twenty "Opt-in Plaintiffs"[1] (collectively, the "Plaintiffs")—worked as "adult entertainers" at Scarlett's Cabaret." *Ibid.* They claim that, "to avoid . . . FLSA and other legal obligations," the Defendant "misclassif[ies] . . . adult entertainers as independent contractors" instead

---

[1] The first fifteen Opt-In Plaintiffs joined the Motion: Helen Hernandez, Linda Dalla, Capri Celia, Amaris Brielle, Tori McGrath, Alyssa Rodriguez, Brielle Abreu, Leah Foster, Natalia Freire, Lola Gilder, Delma Jurkute, Tatiana Ortiz, Maralan Raymundo-Link, Riah Warnsholz, and Jennifer Llorente. *See* Mot. at 1. The next five opted in after the the Motion was filed: Nina Fernandez, *see* Notice of Entry [ECF No. 44]; Leah Foster, *see* Notice of Entry [ECF No. 51]; Jessica Pinedo, *see* Notice of Entry [ECF No. 56]; and Yazmine Chavez and Seahra Racquel, *see* Notice of Entry [ECF No. 78].

of as "employee[s]." *Id.* at 4. As a result, they tell us, the Defendant "pays no wages to the[ ] entertainers," who are instead "compensated entirely by tips." *Ibid.*; *see also ibid.* ("Scarlett's Cabaret's entertainers are required to pay various fees to Scarlett's Cabaret to work each shift. Each entertainer pays a house fee when they check-in at work. Each entertainer is further required to tip out the 'house mom,' security, managers, and DJ." (citations omitted)).

The Named Plaintiff first filed suit in January 2025, bringing claims under the FLSA, the Florida Constitution, and the Florida Minimum Wage Act. *See* Complaint [ECF No. 1] ¶¶ 81–121. She filed the First Amended Complaint (the "FAC") [ECF No. 12] in February 2025. Joined by the first fifteen Opt-In Plaintiffs, the Named Plaintiff filed this Motion on May 15, 2025, asking that we conditionally certify an FLSA class comprising "[a]ll adult entertainers/dancers who worked at Scarlett's Cabaret in the past three years." Mot. at 15. In support of that request, the Plaintiffs rely on five declarations—*see* Dana Lopez Decl. [ECF No. 33-1]; Capri Celia Decl. [ECF No. 33-2]; Jennifer Llorente [ECF No. 33-3]; Alyssa Rodriguez Decl. [ECF No. 33-4]; Helen Hernandez Decl. [ECF No. 33-5]—which they believe demonstrate that the "Defendant's adult entertainers/dancers" (1) were "misclassified as independent contractors"; (2) "worked at the same position performing the same primary duties"; (3) "worked at the same location under the same management during the same time period (last three years)"; (4) were "subject to the same rules, policies and procedures at work"; (5) were "compensated the same way as they were paid no wages and worked for tips only paid by the customers"; (6) were "required to pay the same fees to work each shift"; and (7) were "required to tip out the 'house mom,' security, managers, DJ, and sometimes valets and cashiers." Mot. at 8; *see also ibid.* ("The declarations submitted with this Motion establish[ ] that Plaintiffs and the class members (i) held the same job title; (ii) worked at the same geographic location; (iii) worked at Scarlett's Cabaret during the same three-year time frame; (iv) were subject to the same policies and procedures at work under the same management; and (v) were subject to the same purported FLSA violations at work.");

2

*id.* at 11 ("Plaintiffs estimate that the potential class members exceed 50-100 each night, and in total several hundred entertainers worked for the Defendant during the applicable period."). Five days later, on May 20, 2025, the Named Plaintiff filed the operative Second Amended Complaint (the "SAC") [ECF No. 35], which removed the Florida Minimum Wage Act claim.

In June 2025, the Defendant filed its Response in Opposition to the Motion for FLSA Conditional Certification (the "Response") [ECF No. 43]. That same month, the Plaintiffs filed a Reply in Support of the Motion for FLSA Conditional Certification (the "Reply") [ECF No. 49]. And, in January 2026, the Defendant filed a Supplemental Response to the Motion for FLSA Conditional Certification (the "Supplemental Response") [ECF No. 96] to "address the Motion as it relates to the five individuals who filed consents to opt into this action after [the Defendant] filed its Response." *Id.* at 1; *see also* Order After Status Conference [ECF No. 95] (granting the Defendant leave to file a supplemental response to the Motion).

## THE LAW

"The FLSA authorizes collective actions against employers accused of violating the FLSA." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Section 216(b) provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "The key to an FLSA collective action is that participants must affirmatively opt into the suit." *Johnson v. Webhelp Americas LLC*, 2026 WL 391171, at *2 (S.D. Fla. Feb. 12, 2026) (Altman, J.) (quotation marks omitted); *see* § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). So, "once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Webhelp*, 2026 WL 391171, at *2 (quotation marks omitted); *see also LaChapelle v. Owens–Illinois,*

*Inc.*, 513 F.2d 286, 288–89 (5th Cir. 1975) (recognizing the "fundamental" difference between Rule 23 class actions and § 216(b) collective actions). "Because similarly situated employees must affirmatively opt-in to the lawsuit, the decision to certify the action, on its own, does not create a class of plaintiffs." *Morgan*, 551 F.3d at 1259.

"While not requiring a rigid process for determining similarity, the Eleventh Circuit has sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase." *Webhelp*, 2026 WL 391171, at *2 (quotation marks omitted). "The first step of whether a collective action should be certified is the notice stage"—"also referred to as conditional certification"—during which "a district court determines whether other similarly situated employees should be notified." *Ibid.* (quotation marks omitted). "[A]fter a plaintiff satisfies its initial burden to demonstrate the existence of similarly situated employees, an employer may move for decertification," at which point the district court makes "a more informed factual determination of similarity." *Id.* at *3 (quotation marks omitted). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261.

## ANALYSIS

The Defendant challenges the Motion on three grounds. *First*, it notes that the "[N]amed Plaintiff, opt-ins, and all putative class members signed and executed valid and enforceable collective and class action waivers." Resp. at 1. *Second*, the Defendant maintains that the Plaintiffs fail to meet their burden for conditional certification. *Third*, the Defendant contends that "the Plaintiffs' proposed form of notice should be rejected because it omits material information to which potential opt-ins are entitled." *Id.* at 12. We can begin—and end—with the first challenge.

The Defendant asks us to "deny Plaintiff's request and strike the opt-in Plaintiffs' claims" because "all dancers at Scarlett's Cabaret" signed Entertainer License Agreements ("ELAs") "containing collective and class action waivers." Resp. at 9. According to the Defendant, "[i]t is the

4

policy and procedure of Scarlett's Cabaret to require dancers to execute ELAs, which contain . . . arbitration clauses and collective action waivers, prior to being given access to perform dancing services at Scarlett's Cabaret," and so *any* dancer who "did not execute these ELAs . . . would not have been authorized to perform dancing services at the club." *Id.* at 6, 9. Specifically, the Defendant argues that each ELA contains a "class and collective action waiver"—within an arbitration provision and/or "separate from [an] arbitration provision." *Id.* at 5; *see, e.g.*, Dana Lopez ELA [ECF No. 43-2] at 7 ("**THE PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT THEY SPECIFICALLY WAIVE ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AS AGAINST THE OTHER PARTY**[.]"); Jeniffer Llorente ELA [ECF No. 43-7] at 9 ("**All claims or disputes between the parties will be adjudicated individually; the Parties understand and agree that they will not consolidate their claims with the claims of any other individual; will not seek class or collective action treatment for any claim that they may have; and will not participate in any class or collective action regardless of the forum in which they pursue their rights**."); *ibid.* ("**THE PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT THEY SPECIFICALLY WAIVE ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AS AGAINST THE OTHER PARTY REGARDLESS OF THE FORUM IN WHICH THE PARTY PURSUES THEIR RIGHTS**[.]"); *see also* Lola Gilder ELA [ECF No. 43-3]; Linda Dalla ELA [ECF No. 43-4]; Deima Jurkute ELA [ECF No. 43-5]; Brielle Abreu ELA [ECF No. 43-6]; Helen Hernandez ELA [ECF No. 43-8]; Victoria McGrath ELA [ECF No. 43-9]; Alyssa Rodriguez ELA [ECF No. 43-10]; Natalia Freire ELA [ECF No. 43-11]; Maraian Raymundo-Link ELA [ECF No. 43-12]; Supp. Resp. at 2 ("Recent Opt-[I]ns executed substantively similar . . . ELAs as those addressed in the Response, including arbitration clauses and class and collective action waivers.").

The Plaintiffs counter that the Defendant "failed to timely enforce any collective or class action waivers" and thus waived that defense. Reply at 2 (cleaned up). Specifically, they argue that the Defendant "has continued to participate in each stage of litigation" and, under the "totality of the circumstances," has "acted inconsistently with its rights of arbitration or class waiver." *Id.* at 5–6. In advancing this waiver argument, the Plaintiffs rely on caselaw analyzing the waiver of *arbitration* rights. *See id.* at 2 ("Just like arbitration can be waived, a defendant's failure to seek to enforce the class action waiver, can result in the defendant waiving their right."). For our purposes, we can assume without deciding that this precedent applies to collective and class-action waivers. *See Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1282 (S.D. Fla. 2022) (Ruiz, J.) ("The parallels between class action waiver and an arbitration clause are obvious[.]"). And we can make that assumption safely because the precedent the Plaintiffs rely on counsels against finding any such waiver here.

"Like any other contractual right, the right to arbitrate can be waived." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235–36 (11th Cir. 2018) (cleaned up). "A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990); *but see Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) ("[P]rejudice is not a condition of finding that a party . . . waived its right to stay litigation or compel arbitration under the FAA."). "There's no set rule as to what constitutes waiver of an arbitration agreement, so we review whether a waiver has occurred based on the facts of each case." *Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023). Still, a "key factor in deciding this is whether a party has substantially invoked the litigation machinery," such as by proceeding "with extensive discovery and court proceedings." *Gutierrez*, 889 F.3d at 1236 (cleaned up).

Our Plaintiffs find it "clear that [the] Defendant has acted inconsistently with its rights of arbitration or class waiver." Reply at 6. In their view, the Defendant (1) filed its Response "over four

months" after appearing in the action; (2) "completed initial disclosures and participated in the joint scheduling report"; (3) "has been served with discovery and a request for a deposition of Defendant's corporate representative"; and (4) "has moved to strike Plaintiff's attorney's fees." *Id.* at 5. What's more, the Plaintiffs observe that "this Court has entered deadlines for discovery (November 4, 2025), mediation (November 18, 2025), as well as a Trial date (March 2, 2026)," that the "Defendant hasn't sought to compel arbitration on any of the Plaintiffs at this stage of the litigation either," and that the "Defendant failed to raise the collective waiver through a motion to dismiss, failed to raise it in its first defensive move, failed to challenge Plaintiff's requested judicial remedy in Plaintiff's complaint, and actively participated in the litigation." *Ibid.* We disagree that any of this constitutes a waiver of the Defendant's rights.

Let's start with the timeline of events. The Named Plaintiff filed her original Complaint on January 24, 2025. Counsel for the Defendant filed a Notice of Appearance [ECF No. 9] on February 10, 2025. That same day, the Named Plaintiff amended her complaint—and did so without being joined by any Opt-In Plaintiffs. On April 5, 2025, the Defendant filed its Answer [ECF No. 18], which asserted as an affirmative defense that "[t]he claims of Plaintiffs and putative claims of others are barred, in whole or in part, because they executed arbitration agreements and collective and class action waivers." *Id.* at 9.

Later that month, on April 24, 2025, the parties filed a Joint Scheduling Report [ECF No. 24], in compliance with our Order Requiring Scheduling Report [ECF No. 21]. On May 15, 2025, the Named Plaintiff—only *now* joined by the Opt-In Plaintiffs—filed the Motion. And, on May 20, 2025, the Named Plaintiff filed the operative SAC. That same day, the Defendant moved for an extension of time to respond to the Motion, *see* Motion for Extension [ECF No. 36], and the parties filed a Joint Motion for Extension of Time to Conduct Magistrate Settlement Conference [ECF No. 37]. On May 28, 2025, the parties selected a mediator. *See* Notice of Mediator Selection and Hearing [ECF No. 40].

On June 3, 2025, the Defendant moved to strike the portion of the SAC that sought "attorney's fees" for the "inclusion" of the Opt-In Plaintiffs, arguing that those fees "are not rewardable . . . because of Plaintiff's counsel's improper solicitation of those opt-ins." Motion to Strike [ECF No. 42] at 1. One week later, on June 11, 2025, the Defendant filed its Response.

That timeline doesn't resemble "the classic 'heads I win, tails you lose' approach to dispute resolution." *Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n*, 767 F.3d 335, 367 (3d Cir. 2014). For one, the four-month gap between the Defendant's appearance in the action and its filing of the Response pales in comparison to the lag times the Eleventh Circuit has found suspect in other cases. *See, e.g.*, *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1040–41 (5th Cir. 1977) (finding waiver after two-and-a-half years of litigation); *Davis v. White*, 795 F. App'x 764, 770 (11th Cir. 2020) (eighteen months); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) (nine months); *S & H Contractors, Inc.*, 906 F.2d at 1514 (eight months). And, indeed, in cases like ours, the Eleventh Circuit has found *no* waiver. *See Sherrard v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 740 (11th Cir. 2018) ("[N]either filing an answer nor waiting four months to seek arbitration was sufficient to constitute a waiver[.]" (quoting *Coca–Cola Bottling Co. of N.Y., Inc. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57–58 (2nd Cir. 2001)); *Valli v. Avis Budget Grp. Inc*, 162 F.4th 396, 412 (3d Cir. 2025) ("Although about four months passed between certification and Avis's motion, the record shows why this interval was not unreasonable."); *Air Prods. & Chemicals, Inc. v. Louisiana Land & Expl. Co.*, 867 F.2d 1376, 1380 (11th Cir. 1989) ("Under Florida law, mere delay is insufficient to support a claim of waiver.").

It's noteworthy, too, that the Defendant didn't spend those four months trying to "resolve the parties' entire dispute on the merits." *Davis*, 795 F. App'x at 769. We cannot fault the Defendant for following our orders to file a Joint Scheduling Report and to select a mediator. *See Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC*, 2024 WL 3042536, at *2 (11th Cir. June 18, 2024) (noting

that participation in a "Rules-mandated meeting" doesn't qualify as "substantially invoking the litigation machinery" (quotation marks omitted)); *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 678 (5th Cir. 2025) ("Traditionally, this court has considered routine scheduling orders and discovery continuances as district court actions that may not move the needle on waiver. After all, filing th[e] joint report may be among those acts that the court might well have directed . . . in the interest of management of the case." (cleaned up)); *see also Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) ("Attempts at settlement . . . are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration.").

Nor can we fault the Defendant for filing an Answer instead of moving to dismiss the case. That Answer specified that the Defendant intended to invoke the "collective and class-action waivers." Answer at 9;[2] *see also In re Marriott Int'l, Inc.*, 78 F.4th 677, 687 (4th Cir. 2023) ("As Marriott argues, it raised its class-waiver defense in its answer to the plaintiffs' complaint and then again at class certification, and at least as a general rule, it is not obvious that more would be required."); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("[A] defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate."); *Garcia*, 141 F.4th at 679 ("To find that the filing of an answer always contributes to substantially invoking the judicial process would be to turn a blind eye to the realities of litigation."). More to the point, the Defendant *couldn't* have moved to dismiss the Complaint or the FAC on the basis of a collective and

---

[2] To be sure, the Answer also invoked the right to arbitration, though the Defendant hasn't since pressed that right. But the Plaintiffs don't argue that a waiver of the arbitration right itself constitutes a waiver of the collective and class-action provisions. Nor do they contest the Defendant's claims that "all dancers at Scarlett's Cabaret signed ELAs containing collective and class action waivers," that anyone "who did not execute these ELAs . . . would not have been authorized to perform dancing services at the club," and that "[e]ach [ELA] contain[s] precisely the same severability clause." Resp. at 6, 9. They've thus forfeited any such arguments. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (cleaned up)).

class-action waiver. Indeed, no Opt-In Plaintiffs appeared until the filing of the SAC—five days *after* the Motion was filed. *See Krinsk*, 654 F.3d at 1203 ("[W]hen a plaintiff files an amended pleading that unexpectedly changes the shape of the case, the case may be so altered that the defendant should be relieved from its waiver.").

The discovery-based arguments fare no better. That the Plaintiffs "served" the Defendant "with discovery and a request for a deposition of Defendant's corporate representative" doesn't mean that *the Defendant* waived its rights. Reply at 6. When finding waiver of an arbitration right, courts generally consider whether a party engaged in "extensive" pretrial discovery. *Gordon v. Barclays Bank Delaware*, 2026 WL 177610, at *4 (S.D. Fla. Jan. 22, 2026) (Altman, J.) (quotation marks omitted). The Plaintiffs have described no such *extensive* pre-Response discovery here. *See, e.g., S & H Contractors*, 906 F.2d at 1514 (finding waiver when a party "took the depositions of five . . . employees (total[ ]ing approximately 430 pages) prior to demanding arbitration"); *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1278 (11th Cir. 2012) (same when a party conducted discovery for over a year, including more than 15 depositions and the production of approximately 900,000 pages of documents); *see also Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 427 (7th Cir. 2025) ("They produced thousands of documents and . . . responded to two different requests from the court for status updates. And then, with discovery well underway and deadlines extended multiple times due to their dilatory conduct, the 777 Defendants requested arbitration."); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 972 (6th Cir. 2024) ("For seven months, UWM participated in extensive discovery—producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas—without ever mentioning arbitration."); *Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204, at *2 (9th Cir. Oct. 21, 2025) ("The case proceeded through the judicial system with two case management conferences and AH Capital serving and responding to discovery requests. The

10

parties engaged in multiple meet and confers. AH Capital ultimately filed its motion to compel twenty months into this litigation.").

Over this four-month period, the Defendant filed *one* substantive motion—its Motion to Strike. That motion asked that we "strike any claim for attorney's fees associated with the . . . opt-ins" who joined the SAC "because of Plaintiff's counsel's improper solicitation of those opt-ins through unauthorized website advertisment(s) outside of the collective action process." Mot. to Strike at 1, 7. According to the Defendant, the Plaintiffs' counsel "violated Southern District Local Rule 11.1(c) and Rule 4-7.18 of the Florida Rules Regulating the Bar by using social media to unlawfully solicit participation in this lawsuit, including through a promotional post on Instagram that featured Defendant's registered trademark and a direct 'sign up' link for prospective plaintiffs." *Id.* at 2. In other words, that motion challenged (allegedly) "unethical" behavior on the part of the Plaintiffs' counsel, not the *merits* of the SAC. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011) (declining to find waiver when a party's motion didn't "even ma[k]e mention of the merits in its briefing"); *Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (distinguishing a "full-throated attempt to win th[e] case on the merits" from a motion that "only delayed or raised procedural concerns").[3]

In sum: arbitration-specific caselaw militates against finding waiver here. The Defendant asserted its defense in its Answer. It filed its Response before engaging in extensive discovery and without filing merits-focused motions. Its lone substantive motion—the Motion to Strike—alleged misconduct on the part of the Plaintiffs' counsel—and didn't address the case's merits. Given the

---

[3] On June 24, 2025, we denied the Motion to Strike *without prejudice*, noting that "[t]he Defendant will be free to re-raise its motion to strike after liability in the case is determined." Paperless Order [ECF No. 48].

totality of these circumstances, we cannot say that the Defendant relinquished its right to invoke the collective and class-action waivers.[4]

Nor have the Plaintiffs done anything to attack the legitimacy of those waivers. To the contrary, the Plaintiffs *concede* that the waivers are otherwise binding. *See* Reply at 2 ("Class or collective action waivers, like arbitration, are enforceable under the FLSA."); *id.* at 6 ("[I]t is clear that Defendant

---

[4] As noted above, we analyzed the question of waiver by analogizing to the arbitration context—and did so on the basis of the Plaintiffs' framing. But the outcome we reach today would remain the same were we to consider the question without that analogy and thus without the benefit of the Federal Arbitration Act's "liberal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

"Waiver is either an intentional or voluntary relinquishment of a known right, *or* conduct giving rise to an inference of the relinquishment of a known right." *Air Prods.*, 867 F.2d at 1379 (emphasis added); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right[.]" (quotation marks omitted)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right," and "[t]hat analysis applies to the waiver of a contractual right, as of any other." *Morgan*, 596 U.S. at 417; *see also id.* at 418 ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts *like all others*[.]" (emphasis added)).

That approach to waiver holds true irrespective of the *type* of contract at issue. *See, e.g., Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973) ("A party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right."); *Convergys Corp. v. NLRB*, 866 F.3d 635, 639 (5th Cir. 2017) ("[T]here is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract."); *Carnival Corp. v. Booth*, 946 So. 2d 1112, 1115 (Fla. Dist. Ct. App. 2006) ("Courts have often compared forum selection clauses to arbitration clauses and have applied a similar enforceability analysis to both."); *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 193 (11th Cir. 2021) ("A party may be held to have waived its right to appraisal if it has actively participated in a lawsuit or engaged in conduct inconsistent with the right." (cleaned up)).

Here, the Defendant represents (and the Plaintiffs don't deny) that the dancers signed collective and class-action waivers. On the record before us, we cannot find that the Defendant expressed an "intention to relinquish that right" or that "the acts, conduct or circumstances relied upon to [imply] waiver . . . make out a clear case." *Air Prods.*, 867 F.2d at 1379. To the contrary, the Defendant asserted its right to enforce the waiver and—for the reasons we've discussed—refrained from engaging in litigation conduct inconsistent with that waiver.

has acted inconsistently with its rights of arbitration or class waiver."). And, for three reasons, we see no reason to independently question the enforceability of those provisions.

*First*, "parties may indeed waive class-action litigation by contract." *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 134 (4th Cir. 2025); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) ("Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights."); *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 673 n.6 (9th Cir. 2025) ("Courts enforce arbitration clauses for the straightforward reason that . . . the . . . FAA . . . generally requires they do so. Class action waivers contained in arbitration agreements are enforceable for the same reason." (citations omitted)). In fact, "[c]ourts now routinely enforce contractual class-action waivers," even "in cases that do not involve an arbitration agreement." *Maldini*, 140 F.4th at 134.

*Second*, the Eleventh Circuit has made clear that "the enforcement of collective action waivers in arbitration agreements is . . . not inconsistent with the FLSA." *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1335 (11th Cir. 2014); *see also id.* at 1334 ("[T]he FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action[.]"). Indeed, "all of the circuits to address this issue have concluded that § [2]16(b) does not provide for a non-waivable, substantive right to bring a collective action." *Id.* at 1336.

*Third*, the Plaintiffs haven't mounted an effective-vindication argument. *See Williams v. Shapiro*, 161 F.4th 1313, 1318 (11th Cir. 2025) ("The effective vindication doctrine invalidates arbitration provisions that prospectively waive a party's right to pursue statutory remedies." (quotation marks omitted)). In any event, "the FLSA's legislative history . . . do[es] not show that Congress intended the collective action provision to be essential to the effective vindication of the FLSA's rights." *Walthour*, 745 F.3d at 1335.

\*   \*   \*

"In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). So, "[i]f a party passes up what seems to us a promising argument, we do not assume the role of advocate" and instead "decide the questions that the parties choose to present." *Trump v. Illinois*, 607 U.S. ___, ___ (2025) (Alito, J., dissenting) (slip op., at 1). Given the arguments presented and the record before us, we see no reason to set aside the collective and class-action waivers here.[5]

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that the Plaintiffs' Motion for FLSA Conditional Certification [ECF No. 33] is **DENIED**.

---

[5] A final note. The Defendant offers three grounds for denying the Motion. For the reasons detailed above, the first argument—that all dancers at Scarlett's Cabaret signed collective and class-action waivers—suffices. We add briefly, though, that the Defendant's second argument (*i.e.*, that the Plaintiffs fail to carry their conditional-certification burden) appears to have merit.

The Plaintiffs appended only five declarations to the Motion. *See* Dana Lopez Decl. [ECF No. 33-1]; Capri Celia Decl. [ECF No. 33-2]; Jennifer Llorente Decl. [ECF No. 33-3]; Alyssa Rodriguez Decl. [ECF No. 33-4]; Helen Hernandez Decl. [ECF No. 33-5]. So, even if we assume that those declarations satisfy the requirements for conditional certification as to Lopez, Celia, Llorente, Rodriguez, and Hernandez, we'd be unable to include the remaining *sixteen* individuals in that class. And that's because "courts in our Circuit frequently deny collective-class certification . . . where the only evidence the plaintiff adduces comes from conclusory assertions in her own declaration." *Webhelp*, 2026 WL 391171, at *7; *see also ibid.* (explaining that finding opt-in plaintiffs "similarly situated" requires meeting a "five-step inquiry" showing that the individuals "share the same 'job title' . . . or 'geographic location' with the Plaintiff, that the 'time period' of the 'alleged violations' was the same, that they were subjected to the same 'policies and practices' as the Plaintiff, or that the 'actions which constitute violations' were the same" (quotation marks omitted)).

In any event, the Defendant has provided ELAs for Lopez, Lorente, Rodriguez, and Hernandez, though it hasn't (at least yet) done the same for Celia. *See* Lopez ELA; Llorente ELA; Rodriguez ELA; Hernandez ELA. *But see* Resp. at 7 ("[A]ll dancers at Scarlett's Cabaret signed ELAs containing collective and class action waivers."). So, *at a minimum*, 20 of the 21 Plaintiffs appear ineligible for certification.

**DONE AND ORDERED** in the Southern District of Florida on March 13, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record